United States District Court
Eastern District of North Carolina
**Razjanae Evans**, Plaintiff,
v.
**Holly Hill Hospital and Universal Health Services, Inc.**, Defendants.
Docket No. 5:26-CV-640-BO

# Attachment to Page 4: Statement of Claim (Continued)

Beginning on December 9, 2025, Plaintiff formally requested routine pregnancy accommodations, including relief from solo shifts and aggressive patient assignments. Under the Pregnant Workers Fairness Act (PWFA), these straightforward requests did not legally require medical certification; nevertheless, Defendants failed to engage in a good-faith interactive process and stonewalled her request for months.

Throughout this two-month span, Plaintiff repeatedly communicated her safety concerns on numerous occasions—verbally, via documented text messages, and through a formal "preventative warning" dated January 15, 2026—explicitly notifying management that she was being left alone on the floor with actively aggressive patients.
On January 6, 2026, and January 28, 2026, Plaintiff provided formal medical restriction letters from her WakeMed healthcare providers (Dr. Laurian Roediger and CNM Julie Ann Stembridge) explicitly requiring staff support to avoid physical assault and blunt abdominal trauma from aggressive patients.

Despite possessing these active restrictions, repeated warnings, and internal facility policies, Defendants left Plaintiff isolated on a solo shift on January 30, 2026, with patients including one in particular who was on a 1:1 continuous watch for aggression and required a dedicated staff member at all times. On that shift, that aggressive 1:1 patient got up and physically attacked another patient; because Plaintiff was entirely alone on the floor with no other staff member present, no staff was available to help, forcing other patients to physically restrain and redirect the aggressive patient, while knowing Plaintiff could not perform physical restraints due to her medical restrictions. Following this unsafe escalation, Plaintiff left the floor and placed supervision into the hands of the house supervisor; the house supervisor then attempted to seize Plaintiff's badge and keys—effectively attempting a termination—simply because Plaintiff refused to remain in an unsafe environment that management itself admitted was entirely against company policy.

Following this dangerous incident, HR held a formal meeting on February 4, 2026, specifically to address the January 30 crisis. During this meeting, management dismissed Plaintiff's valid medical notes, exhibited intimidating and retaliatory behavior and language, and demanded burdensome ADA paperwork—an absurd requirement meant to force Plaintiff through unnecessary hoops just to compel compliance with rules their own policy already mandated. Crucially, during this same meeting context, which Plaintiff audio-recorded and has fully transcribed, the house supervisor, the director of nursing, and the HR director all explicitly admitted that company policy prohibits leaving any staff member alone on the floor, while simultaneously attempting to intimidate Plaintiff for speaking up.